[No. 33280-2-III.   Division Three.   August 2, 2016.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC ALLEN HAGGIN, *Appellant*.

*Andrea Burkhart* (of *Burkhart & Burkhart PLLC*), for appellant.

*Gregory L. Zempel*, *Prosecuting Attorney*, and *Jodi M. Hammond*, *Deputy*, for respondent.

¶1  LAWRENCE-BERREY, J. — Eric Haggin appeals his convictions for two counts of first degree unlawful possession of a firearm, possession of methamphetamine with intent to deliver, possession of heroin with intent to deliver, use of drug paraphernalia, second degree theft, and witness tampering. He raises six arguments on appeal.

¶2  In the published portion of this opinion, we address Mr. Haggin's fourth argument: the trial court erred when it ran his two unlawful possession of firearm sentences consecutively. We hold that the second sentence of RCW 9.94A-.589(1)(c) must be read in tandem with the first sentence, so that multiple current convictions for unlawful possession of firearm offenses result in concurrent sentences, unless there also is a current conviction for theft of a firearm and/or possession of a stolen firearm. In the unpublished portion of this opinion, we address and generally reject Mr. Haggin's remaining arguments. We therefore affirm in part and remand for resentencing in accordance with this opinion.

## FACTS

¶3  In August 2014, Christy Stransky and her boyfriend, Cordra Gill, traveled to Ellensburg, Washington, so Mr. Gill

could compete as a professional roper in the Ellensburg Rodeo. During their stay, they went to a Laundromat to wash their clothes. Ms. Stransky put their clothes in the dryer, and the two left. When they returned, their clothes were not there. Ms. Stransky contacted the Laundromat's owner, and they watched the Laundromat's surveillance video. On the video, Ms. Stransky saw a man come in, open the dryer that her and Mr. Gill's clothes were in, and take them. Ms. Stransky eventually called the police.

¶4 The Laundromat's owner showed Officer Josh Ingraham the video, and Officer Ingraham recognized Mr. Haggin as the man who took the clothes. Officer Ingraham obtained a warrant to search Mr. Haggin's apartment for the clothing. The police went to the apartment where Mr. Haggin and his girlfriend, Asenet Diaz, both lived. The police searched the apartment and found the missing clothing. While searching the apartment, Officer Ingraham saw a tray of suspected heroin, methamphetamine, and drug paraphernalia.

¶5 Officer Ingraham showed the tray to Detective Klifford Caillier, who then left and applied for a warrant to search for controlled substances. Officer Ingraham then found a pistol in a backpack and a revolver inside a box on a dresser. There were two dressers in the room, and the dresser with the revolver on top of it had female clothing in it, as well as makeup and feminine products on it. Detective Caillier believed this dresser was Ms. Diaz's.

¶6 The officers executed the second warrant and found a plastic bag and a tin in the freezer that contained suspected heroin. Detective Caillier also searched the backpack, which contained "baggies" of suspected heroin and large quantities of suspected methamphetamine in rock form. Detective Caillier also found digital scales and ledgers.

¶7 The State charged Mr. Haggin and Ms. Diaz with possession of a stolen firearm, possession of methamphetamine with intent to deliver, possession of heroin with intent to deliver, and two counts of use of drug parapher-

nalia. The State also charged Mr. Haggin individually with two counts of first degree unlawful possession of a firearm and second degree theft. Ms. Diaz pleaded guilty to solicitation to possess a controlled substance with intent to deliver and possession of a stolen firearm.

¶8 The jury convicted Mr. Haggin of both counts of first degree unlawful possession of a firearm, both counts of possession of a controlled substance with intent to deliver, both counts of use of drug paraphernalia, second degree theft, and tampering with a witness. The jury also returned a special verdict finding that Mr. Haggin was armed with a firearm at the time he committed both counts of possession with intent to deliver. The jury acquitted Mr. Haggin of possession of a stolen firearm.

¶9 The trial court sentenced Mr. Haggin to 101 months' incarceration on both unlawful possession of a firearm counts and ordered both sentences to run consecutively. The trial court ran the remaining sentences concurrently. The trial court sentenced Mr. Haggin to 36 months' confinement on each firearm enhancement, and ran each enhancement consecutively to the end of the sentence. The trial court also imposed 12 months' community custody to follow Mr. Haggin's terms of confinement for his possession with intent to deliver convictions. Mr. Haggin appeals.

## ANALYSIS

### Consecutive Sentences for Unlawful Possession of Firearm Convictions and RCW 9.94A.589(1)(c)

¶10 Mr. Haggin argues the trial court erred when it ran his two sentences for unlawful possession of a firearm consecutively. The parties dispute the meaning of RCW 9.94A.589(1)(c), which provides:

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, the standard sentence range for each of these

current offenses shall be determined by using all other current and prior convictions, except other current convictions for the felony crimes listed in this subsection (1)(c), as if they were prior convictions. The offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed.

¶11 The fundamental goal of statutory interpretation is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). When interpreting a statute, courts look first to the statute's plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). "If the statutory language is susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Id.*

¶12 This court construes the meaning of a statute by reading it in its entirety and considering its relation with other statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Statutes relating to the same subject matter must be construed together. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001) (quoting *In re Pers. Restraint of Yim*, 139 Wn.2d 581, 592, 989 P.2d 512 (1999)). Statutes relating to the same subject matter " 'are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes.' " *Id.* (quoting *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974)). Statutory interpretation is a question of law this court reviews de novo. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (2010).

¶13 The issue here is whether RCW 9.94A.589(1)(c) requires consecutive sentences when a defendant is con-

victed of multiple counts of unlawful possession of a firearm, but is *not* convicted of either firearm theft or possession of a stolen firearm. The crux of the issue is whether RCW 9.94A.589(1)(c)'s second sentence functions independently of the first sentence, as if it were its own separate statute, or whether the second sentence functions only in tandem with the first sentence. Because it is not clear how the second sentence functions with respect to the first, there is an ambiguity that requires this court to apply rules of statutory construction.

¶14 The State argues the sentences function independently. This would mean that trial courts must run all sentences for unlawful possession, firearm theft, and possession of a stolen firearm consecutively, in addition to consecutive sentences for every firearm. In contrast, Mr. Haggin argues the second sentence applies only when a person is convicted of unlawful possession *and either* theft of a firearm *or* possessing a stolen firearm. Because the jury acquitted him of possessing a stolen firearm, he contends that RCW 9.94A.589(1)(c) does not apply and RCW 9.94A.589(1)(a) controls, which requires concurrent sentences.

### 1. *Canons of statutory construction*

¶15 Several canons of statutory construction support Mr. Haggin's interpretation. First, the principle that a statute should be construed by reading it *in its entirety* supports interpreting RCW 9.94A.589(1)(c) so the second sentence modifies the first sentence.

¶16 The principle that construing statutes together when they relate to the same subject matter also supports this interpretation. A similar provision, RCW 9.41.040(6), provides in relevant part:

> Notwithstanding any other law, if the offender is convicted under this section for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the

> offender shall serve consecutive sentences for each of the felony crimes of conviction listed in this subsection.

This provision states the rule more clearly: a trial court can impose consecutive sentences only when the defendant is convicted of unlawful possession *and either* theft of a firearm *or* possession of a stolen firearm. Thus, under RCW 9.41.040(6), if a person is convicted of multiple counts but only in one category (e.g., multiple counts of unlawful possession), the trial court must run those sentences concurrently. Interpreting RCW 9.94A.589(1)(c) consistently with RCW 9.41.040(6) results in a harmonious, unified statutory scheme.

### 2. *Relevant case law*

¶17 Although no published case explicitly addresses this ambiguity, relevant case law supports Mr. Haggin's interpretation. In *Murphy*, the jury convicted Thomas Murphy of five counts of firearm theft and five counts of unlawful possession. *State v. Murphy*, 98 Wn. App. 42, 45, 988 P.2d 1018 (1999). The trial court ran the five theft counts concurrently with one another and the five unlawful possession counts concurrently with one another, but ran the two groups of firearm counts consecutively to one another. *Id.* at 46. The *Murphy* court reversed, finding that under RCW 9.41.040(6) "the trial court should have run each of [Mr.] Murphy's 10 firearm theft and unlawful possession convictions consecutively to one another." *Id.* at 49.

¶18 In doing so, the *Murphy* court acknowledged that the legislature had recently amended the Hard Time for Armed Crime Act (HTACA) to include the provision at issue in this case.[1] *Id.* at 48 n.7. The court noted that it "view[ed] this amendment, *not as a change to the effect of the statute as previously worded, but rather as an underscore that the*

---

[1] At the time, the provision was codified as former RCW 9.94A.400(1)(c) (1998). In 2001, the legislature recodified former RCW 9.94A.400 as RCW 9.94A.589, but did not make any substantive changes. *See* Laws of 2001, ch. 10, § 6.

*Legislature meant what it said originally* in the plain language of [RCW 9.41.040(6)], as prefaced by 'Notwith-standing any other law.' " *Id.* at 49 n.7 (emphasis added); *see also State v. Haddock*, 141 Wn.2d 103, 115 n.7, 3 P.3d 733 (2000) ("Laws of 1998, ch. 235, § 2 added subsection (1)(c) relating to serving consecutive sentences for crimes involv-ing *both* possession of a firearm *and* theft of a firearm or possession of a stolen firearm." (emphasis added)).

### 3. *Legislative history*

¶19 Finally, RCW 9.94A.589(1)(c)'s legislative history supports Mr. Haggin's interpretation. In 1995, the legisla-ture passed the HTACA. Laws of 1995, ch. 129. The HTACA originally included RCW 9.41.040(6).[2] *See id.* § 16(6). The purpose of this subsection, according to the House Bill Report, was to establish that

> [i]f the person is also serving time for possession of a stolen firearm or stealing a firearm, the time served for unlawful possession of firearms must be served consecutively with the other offenses.

H.B. Rep. on Initiative 159, at 6, 54th Leg., Reg. Sess. (Wash. 1995).

¶20 In 1998, the legislature enacted former RCW 9.94A.400(1)(c):

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection, and for each firearm unlawfully possessed.

Laws of 1998, ch. 235, § 2(1)(c). Former RCW 9.94A.400(1)(c) was virtually identical to RCW 9.41.040(6). As noted above, the *Murphy* court interpreted former RCW 9.94A.400(1)(c) and RCW 9.41.040(6) as having the same meaning. *Mur-*

---

[2] The legislature has never amended RCW 9.41.040(6).

*phy*, 98 Wn. App. at 48 n.7. The stated purpose of the amendments was to

> amend[ ] the Sentencing Reform Act [of 1981, chapter 9.94A RCW,] to provide that sentences must be served consecutively for the multiple offenses of unlawful possession of a firearm in the first or second degree and possession of a stolen firearm or theft of a firearm, but that current weapon-related offenses may not be considered in criminal history when calculating the offender score to determine the sentence range.

FINAL B. REP. ON H.B. 1544, at 3, 56th Leg., Reg. Sess. (Wash. 1999).

¶21 However, after the former RCW 9.94A.400 amendments went into effect, the legislature determined that "[t]he language of the bill had an unintended effect of preventing the consideration of any current offense when calculating the offender score." *Id.* Accordingly, the next year the legislature "amend[ed] the statute for persons convicted of multiple firearm offenses to allow consideration of any current and prior convictions except other current weapons related convictions when calculating the offender score." S.B. REP. ON H.B. 1544, at 2, 56th Leg., Reg. Sess. (Wash. 1999).

¶22 This 1999 amendment separated former RCW 9.94A-.400(1)(c) into two different sentences. *See* LAWS OF 1999, ch. 352, § 11(1)(c). The first sentence clarified that all current and prior convictions must be added to the defendant's offender score *except* current weapons-related convictions. The second sentence—which states that the defendant must serve consecutive sentences on each conviction for the crimes in this subsection and for each firearm unlawfully possessed—remained the same as it did before the amendment.

¶23 The legislative history expressly states that the purpose of the amendment that separated RCW 9.94A-.589(1)(c) into two sentences was to make sentencing courts calculate other non-weapons-related current offenses into defendants' offender scores. The legislature never intended

for the second sentence in RCW 9.94A.589(1)(c) to operate independently from the rest of subsection (1)(c). RCW 9.94A.589(1)(c) requires trial courts to run sentences consecutively only when a person is convicted of unlawful possession *in addition to* firearm theft *or* possession of a stolen firearm.

¶24 RCW 9.94A.589(1)(c) does not apply here because the jury acquitted Mr. Haggin of possessing a stolen firearm, and therefore, the trial court erred when it ran his two unlawful possession of a firearm sentences consecutively. The trial court should have run the sentences concurrently per RCW 9.94A.589(1)(a).

¶25 Remanded for resentencing. In the unpublished portion of this opinion, we affirm Mr. Haggin's convictions.

¶26 A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040.

FEARING, C.J., and PENNELL, J., concur.