**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 03 2017
Fairhurst. CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Aug 3, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 92947-5 |
| Respondent, | |
| v. | EN BANC |
| CECILY ZORADA McFARLAND, | |
| Petitioner. | Filed AUG 03 2017 |

STEPHENS, J.—A jury convicted Cecily Zorada McFarland of first degree burglary, 10 counts of theft of a firearm, and 3 counts of unlawful possession of a firearm. The trial court imposed standard range sentences on each count and, relying on RCW 9.41.040(6) and 9.94A.589(1)(c), ordered that the firearm-related sentences be served concurrently as to the burglary sentence but consecutively as to each other. This resulted in a total sentence of 237 months (19 years, 9 months).

McFarland appealed, arguing for the first time that the sentencing court erred by failing to recognize its discretion to impose an exceptional mitigated sentence by running the firearm-related sentences concurrently based on the rationale of *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007). The Court of Appeals refused to consider this issue, noting that the sentencing judge "cannot have erred for failing to do something he was never asked to do." *State v. McFarland*, No. 32873-2-III, slip op. at 16 (Wash. Ct. App. Mar. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/328732.unp.pdf. The court also rejected McFarland's claim of ineffective assistance of defense counsel due to "the lack of any history of other counsel successfully making a similar argument." *Id.* at 18.

Today, we answer the question the appeals court's opinion left unresolved. We conclude that the statutory analysis supporting our decision in *Mulholland*, which involved sentencing for multiple serious violent felonies under subsection (1)(b) of RCW 9.94A.589, applies equally to sentencing for multiple firearm-related offenses under subsection (1)(c). We remand for resentencing to allow the trial court the opportunity to consider whether to impose a mitigated sentence by running McFarland's 13 firearm-related sentences concurrently.

## FACTS AND PROCEDURAL HISTORY

McFarland and her boyfriend stole firearms, ammunition, checkbooks, alcohol, and electronics from the home of Fred and Loretta Legault while Loretta

-2-

was not home and Fred was sleeping. The Legaults are the parents of McFarland's former boyfriend, and McFarland became a prime suspect after she texted her former boyfriend during the burglary to tell him she was in his mother's house. At trial, a jury convicted McFarland as charged of first degree burglary as an accomplice, 10 counts of theft of a firearm as an accomplice, and 3 counts of second degree unlawful possession of a firearm.[1]

At sentencing, the State contended that the sentences for all of McFarland's firearm-related convictions must run consecutively to each other pursuant to RCW 9.41.040(6) and 9.94A.589(1)(c). Defense counsel agreed with the State as to running the firearm-related sentences consecutively, but requested sentences at the bottom of the standard range. Defense counsel expressed concern about the overall sentence length, noting that "if [McFarland] had been found guilty of stealing toasters instead of firearms she'd be looking at a range of nine to twelve months' confinement, versus 237 months['] to 306 months['] confinement. So, -- there's a certain degree of -- lack of proportionality in the -- in the punishment based on the consecutive sentences that are required by the legislature." Verbatim Tr. of Proceedings (VTP) (Oct. 27, 2014) at 23-24. The trial judge responded, "237 months is -- just a little shy of 20 years, which is what people typically get for murder

---

[1] A charge of trafficking in stolen property was dismissed. Verbatim Report of Proceedings (Oct. 17, 2014) at 276.

-3-

in the second degree," and defense counsel commented, "I think that's a fairly apt analogy." *Id.* at 24. Nonetheless, defense counsel did not request and the sentencing court did not consider imposing an exceptional sentence downward by running the firearm-related sentences concurrently. The court said, "I don't have -- apparently [I] don't have much discretion, here. Given the fact that these charges are going to be stacked one on top of another, I don't think -- I don't think [the] high end is called for, here." *Id.* at 25. The court accepted defense counsel's recommendation to impose sentences at the bottom of the standard range for each of the firearm-related convictions and entered a total sentence of 237 months (19 years and 9 months). *Id.* at 25-26.

McFarland appealed, contending the trial court erred by not running her firearm-related sentences concurrently as an exceptional sentence on the mistaken belief it could not do so. In the alternative, McFarland contended that trial counsel was ineffective for failing to request concurrent sentencing as an exceptional sentence. The Court of Appeals affirmed.

This court granted McFarland's petition for review. *State v. McFarland*, 186 Wn.2d 1001, 380 P.3d 438 (2016).[2]

---

[2] McFarland's petition for review raised a separate issue concerning the admission of a body camera video taken at the time of her arrest. She subsequently moved to withdraw that issue from consideration. The court has unanimously determined it is appropriate to grant her motion, so that issue is not addressed in this opinion.

-4-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

ANALYSIS

The Sentencing Reform Act of 1981 (SRA) is an attempt to "make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders." RCW 9.94A.010. Among its many objectives, the SRA seeks to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history" and "commensurate with the punishment imposed on others committing similar offenses." RCW 9.94A.010(1), (3). The SRA operates to provide structure to sentencing, "but does not eliminate[] discretionary decisions affecting [offender] sentences." RCW 9.94.010. Consistent with the SRA, a court "may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of [the SRA], that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535.

Multiple sentencing statutes apply to McFarland's firearm-related convictions. Washington's firearms and dangerous weapons statute provides in relevant part that "[n]otwithstanding any other law," if an offender is convicted of either unlawful possession of a firearm in the first or second degree, or for the felony crime of theft of a firearm, or both, "then the offender shall serve consecutive sentences for each of the felony crimes of conviction." RCW 9.41.040(6). The multiple offense subsection of the SRA provides in relevant part that if an offender is convicted under

RCW 9.41.040, "[t]he offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed." RCW 9.94A.589(1)(c). From these statutes, lower courts have concluded that the standard sentences for multiple firearm-related convictions must be served consecutively. *State v. McReynolds*, 117 Wn. App. 309, 342-43, 71 P.3d 663 (2003) (noting that RCW 9.41.040(6) "clearly and unambiguously prohibits concurrent sentences" for firearm-related crimes); *State v. Murphy*, 98 Wn. App. 42, 49, 988 P.2d 1018 (1999).

In *Mulholland*, we recognized that "notwithstanding the language of [RCW 9.94A.589(1)(b)], a sentencing court may order that multiple sentences for *serious violent offenses* run concurrently as an exceptional sentence if it finds there are mitigating factors justifying such a sentence." 161 Wn.2d at 327-28 (emphasis added). The question in this case is whether the rationale of *Mulholland* applies equally to sentencing under RCW 9.94A.589(1)(c). For the reasons that follow, we conclude it does.

I.    RCW 9.94A.535 Authorizes Concurrent Sentencing as an Exceptional Sentence for Multiple Firearm Convictions under RCW 9.94.589(1)(c)

This court in *Mulholland* recognized the authority of a sentencing court to impose an exceptional downward sentence for serious violent offenses by running presumptively consecutive sentences under RCW 9.94A.589(1)(b) concurrently

pursuant to RCW 9.94A.535. In the course of our analysis, we noted that section .535 "does not differentiate between subsections (1)(a) and (1)(b) [of RCW 9.94A.589]." *Mulholland*, 161 Wn.2d at 329-30; *see also State v. Graham*, 181 Wn.2d 878, 884, 337 P.3d 319 (2014) (noting there is no "legal basis to reject or depart from [this court's] prior interpretation" that RCW 9.94A.535 does not differentiate between subsections (1)(a) and (1)(b) of RCW 9.94A.589). While *Mulholland* involved serious violent offenses under 9.94A.589(1)(b) and not firearm-related sentences under RCW 9.94A.589(1)(c), we find no statutory basis to distinguish between the consecutive sentencing language in these two subsections. Both are plainly encompassed within "the multiple offense policy of RCW 9.94A.589." RCW 9.94A.535(1)(g). There is no provision prohibiting exceptional sentences for firearm-related convictions generally, and "[a] departure from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence." RCW 9.94A.535; *see Graham*, 181 Wn.2d at 884. There is thus nothing in the SRA precluding concurrent exceptional sentences for firearm-related convictions.

We recognize that unlike serious violent offenses, firearm-related offenses are also subject to RCW 9.41.040(6), which provides for consecutive sentencing "[n]otwithstanding any other law." We must determine whether this difference

precludes extending the rationale of *Mulholland*. It is certainly possible to interpret the "[n]otwithstanding any other law" language to allow only a reduced amount of time on each count, rather than concurrent sentencing as an exceptional sentence. *McFarland*, slip op. at 18. But, this would mean that instead of running multiple sentences concurrently, a court could simply reduce the term for each consecutive sentence and impose precisely the same term of total confinement, effectively achieving a concurrent sentence in fact that was not allowed by law. *Graham*, 181 Wn.2d at 886. We must consult legislative history to resolve the ambiguity created by such an apparently anomalous result. *Id.* at 882.

RCW 9.41.040(6) was originally enacted as part of the Hard Time for Armed Crime Act, which the people brought to the legislature as an initiative in 1995. *State v. Broadaway*, 133 Wn.2d 118, 124, 942 P.2d 363 (1997). Its relevant language has not changed since that time. The title of the act states that its purpose is "'increasing penalties for armed crimes.'" *Id.* (quoting LAWS OF 1995, ch. 129). The findings and intent are also all clearly aimed at singling out firearm-related offenses for presumptively harsh penalties. LAWS OF 1995, ch. 129, § 1. There is no question that the intent was to provide harsher standard range sentences, including presumptively consecutive sentences, for firearm-related crimes. However, the act does not preclude exceptional sentences downward.

-8-

The precursor to RCW 9.94A.589(1)(c) was first enacted in 1998, and its language regarding consecutive sentencing has not changed. LAWS OF 1998, ch. 235, § 2(1)(c); *State v. Haggin*, 195 Wn. App. 315, 323, 381 P.3d 137 (2016). The primary purpose was to reverse the holding in *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 955 P.2d 798 (1998), ensuring that firearm-related *enhancements* be served consecutively. *State v. Conover*, 183 Wn.2d 706, 714, 355 P.3d 1093 (2015). However, a clear effect of the enactment was to bring sentences for firearm-related *convictions* within "the multiple offense policy of RCW 9.94A.589." RCW 9.94A.535(1)(g). Moreover, the legislature has not taken any steps since *Mulholland* to restrict its holding to particular portions of RCW 9.94A.589(1), and its reasoning plainly encompasses both (1)(b) and (1)(c). Because RCW 9.94A.589(1)(c) was enacted later and "[w]e presume the Legislature is aware of its prior enactments and judicial construction of them," our interpretation of RCW 9.94A.589(1)(c) controls.[3] *State v. McCraw*, 127 Wn.2d 281, 295, 898 P.2d 838 (1995) (Talmadge, J., dissenting) (citing *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

---

[3] While the Court of Appeals has suggested that the enactment of RCW 9.94A.589(1)(c) did not change the consecutive sentencing provision in RCW 9.41.040(6), *McReynolds*, 117 Wn. App. at 343 n.11, that case did not consider the possibility of exceptional sentences, and it predated *Mulholland*.

Building on the logic of *Mulholland,* we hold that in a case in which standard range consecutive sentencing for multiple firearm-related convictions "results in a presumptive sentence that is clearly excessive in light of the purpose of [the SRA]," a sentencing court has discretion to impose an exceptional, mitigated sentence by imposing concurrent firearm-related sentences. RCW 9.94A.535(1)(g).

II.     Resentencing Is Appropriate

McFarland seeks resentencing. She contends the trial court declined to consider running her firearm-related sentences concurrently as an exceptional sentence because it erroneously believed it could not do so. In the alternative, she contends that trial counsel was ineffective for failing to request concurrent exceptional sentencing. Following *Mulholland,* we conclude that McFarland should be resentenced because the sentencing court erroneously believed it could not impose concurrent sentences, and the record demonstrates that it might have done so had it recognized its discretion under RCW 9.94A.535.

When a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law. *State v. Grayson,* 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). While no defendant is entitled to challenge a sentence within the standard range, this rule does not preclude a defendant from challenging on appeal the underlying legal determinations by which

-10-

the sentencing court reaches its decision; every defendant is entitled to have an exceptional sentence actually considered. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). A discretionary sentence within the standard range is reviewable in "'circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.'" *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002) (quoting *Garcia-Martinez*, 88 Wn. App. at 330). A trial court errs when "it refuses categorically to impose an exceptional sentence below the standard range under any circumstances" or when it operates under the "mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible." *Garcia-Martinez*, 88 Wn. App. at 330; *Mulholland*, 161 Wn.2d at 333.

As noted above, the Court of Appeals determined that McFarland was not entitled to resentencing unless she demonstrated ineffective assistance of trial counsel to request a mitigated sentence pursuant to *Mulholland*. *McFarland*, slip op. at 17-18. Rather than request a downward departure from the standard range as an exceptional sentence, McFarland's counsel merely expressed concern for the harshness of the punishment. He otherwise agreed with the State that the sentencing court was required to impose consecutive sentences on the firearm-related charges, so the sentencing court was never advised of its discretion to impose concurrent sentences as a mitigated

-11-

exceptional sentence. The Court of Appeals concluded that the sentencing court committed no error given the arguments raised, and that defense counsel's performance was not deficient "[i]n light of the lack of any history of other counsel successfully" arguing to extend *Mulholland* to multiple firearm-related offenses. *Id.* at 18.

What the Court of Appeals did not consider is the authority of an appellate court to address arguments belatedly raised when necessary to produce a just resolution. Proportionality and consistency in sentencing are central values of the SRA, and courts should afford relief when it serves these values.[4] McFarland's situation is not so different from that in *Mulholland.* The trial court in *Mulholland* imposed consecutive sentences under RCW 9.94A.589(1)(b) without the benefit of any argument that it could consider an exceptional sentence under RCW 9.94A.545. The sole argument raised by defense counsel at sentencing was that the offenses at issue constituted the "'[s]ame criminal conduct.'" *Mulholland*, 161 Wn.2d at 326 (alteration in original) (quoting RCW 9.94A.589(1)(a)). The sentencing court properly rejected this argument but was never advised of the argument—raised for the first time on appeal—that the multiple offense policy of RCW 9.94A.535 authorized a discretionary exceptional sentence

---

[4] Under RAP 2.5(a) appellate courts may entertain issues raised for the first time on appeal in the interest of justice. *See generally State v. Card*, 48 Wn. App. 781, 784, 741 P.2d 65 (1987) (noting RAP 2.5(a) allow courts discretion to consider issues for the first time on appeal "when fundamental justice so requires"); *Greer v. Nw. Nat'l Ins. Co.*, 36 Wn. App. 330, 339, 674 P.2d 1257 (1984) (noting fundamental justice required review of a previously unchallenged insurance clause to determine if it violated public policy).

created by running the serious violent offense terms concurrently. We entertained this argument on appeal in part because of the central importance of ensuring appropriate, consistent sentences. *Mulholland*, 161 Wn.2d at 332-33; *see also Grayson*, 154 Wn.2d at 342 (holding that while not an abuse of discretion, the sentencing judge's failure to exercise meaningful discretion by "categorically" refusing to consider defendant's drug offender sentencing alternative request justified resentencing). Indeed, our opinion in *Mulholland* recognized that an erroneous sentence, imposed without due consideration of an authorized mitigated sentence, constitutes a "fundamental defect" resulting in a miscarriage of justice. 161 Wn.2d at 332. We remanded for resentencing because the record indicated "that it was a possibility" the court would have imposed a mitigated sentence had it recognized its discretion to do so. *Id.* at 334. The sentencing court had made "statements on the record which indicated some openness toward an exceptional sentence." *Id.* at 333; *see also McGill*, 112 Wn. App. at 100-01 (remanding for resentencing because the trial court's comments indicated it may have considered an exceptional sentence if it had known it could, and because the reviewing court was unsure the sentencing court would have imposed the same sentence had it known an exceptional sentence was available); *State v. Bonisisio*, 92 Wn. App. 783, 797, 964 P.2d 1222 (1998) (remanding for resentencing because the record indicated the trial court likely would

have imposed a different sentence had it correctly interpreted a statute to allow concurrent firearm enhancements), *review denied*, 137 Wn.2d 1024 (1999).

In McFarland's case, while the sentencing court's language did not indicate the same level of sympathy or discomfort with the sentence as expressed by the court in *Mulholland*, the court indicated some discomfort with his apparent lack of discretion and even commented that McFarland's standard range sentence was equivalent to that imposed for second degree murder. VTP (Oct. 27, 2014) at 24. As in *Mulholland*, the record suggests at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so. Remand for resentencing is therefore warranted.

## CONCLUSION

The reasoning of our decision in *Mulholland* extends to sentencing for firearm-related offenses under RCW 9.94A.589(1)(c). We reverse the Court of Appeals, vacate McFarland's sentence, and remand to the superior court for resentencing in accordance with this opinion.

Stephens, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

Madsen, J.

Gordon McCloud, J.

Owens, J.

*State v. McFarland*, No. 92947-5
Fairhurst, C.J. (dissenting)

No. 92947-5

FAIRHURST, C.J. (dissenting)—While I agree that the trial court was under no obligation to raise the issue sua sponte, I disagree that if defense counsel had done so here, the trial court had the discretion to impose exceptional concurrent sentences to Cecily McFarland's convictions for the crimes of unlawful possession of a firearm and theft of a firearm.[1] Therefore, I respectfully dissent.

ANALYSIS

Both the majority and Justice Yu's dissent conclude that the Sentencing Reform Act of 1981, specifically RCW 9.94A.535, provides a trial court the discretion to impose an exceptional concurrent sentence to convictions for the crimes of unlawful possession of a firearm and theft of a firearm. Both rely on an extension of our holding in *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007), to do so. Such an extension is misplaced. The plain language of RCW

---

[1] But I express no opinion on whether consecutive sentences must be imposed for all *counts* of unlawful possession of a firearm and theft of a firearm. RCW 9.41.040(6) could be read to indicate that this is not required.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

9.41.040(6) precludes it. Even if the language of RCW 9.41.040(6) were ambiguous, the majority's interpretation is inconsistent with the intent behind RCW 9.41.040(6). Finally, an extension of *Mulholland* to RCW 9.41.040(6) is inappropriate because *Mulholland* applies to RCW 9.94A.589. And RCW 9.41.040(6) is materially different from RCW 9.94A.589.

A.    This holding is inconsistent with the plain language of RCW 9.41.040(6)

> *Notwithstanding any other law*, if the offender is convicted under this section for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender *shall* serve consecutive sentences for each of the felony crimes of conviction listed in this subsection.

RCW 9.41.040(6) (emphasis added). When the language of a statute is clear, we must respect it. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). "Notwithstanding" any other law means to the *preclusion* of any other law. *See* BLACK'S LAW DICTIONARY 1231 (10th ed. 2014) (defining the term as "[d]espite; in spite of"). The majority argues the discretion afforded a sentencing court by RCW 9.94A.535 somehow trumps this language, despite the fact that former RCW 9.94A.390 (1984), the predecessor to RCW 9.94A.535, predates the promulgation of RCW 9.41.040(6) by more than 10 years. *Compare* LAWS OF 1983, ch. 115, § 10, *with* LAWS OF 1995, ch. 129, § 16(6); *see also W. Plaza, LLC v. Tison*, 184 Wn.2d 702, 712, 364 P.3d 76 (2015) (more recent provision generally prevails

2

*State v. McFarland*, No. 92947-5
Fairhurst, C.J. (dissenting)

over older provision). If RCW 9.41.040(6) were intended to be conditional on other statutes, as the majority and Justice Yu's dissent conclude, it could easily have been accomplished through use of qualified language. But no such language was used.

B.      This holding is inconsistent with the intent expressed by the authors of the Hard Time for Armed Crime Initiative

RCW 9.41.040(6) was the result of a voter initiative—the "Hard Time for Armed Crime" initiative of 1995 (HTACI).[2] Voters brought it forth as an initiative to the legislature. The legislature, in turn, adopted the HTACI without amendment. LAWS OF 1995, ch. 129, § 16; *see also Cmty. Care Coal. of Wash. v. Reed*, 165 Wn.2d 606, 612-13, 200 P.3d 701 (2009) (describing the initiative process). The HTACI included a statement of findings and intent, which was also adopted by the legislature without amendment. According to the statement, the HTACI was intended to "[d]istinguish between the gun predators and criminals carrying other deadly weapons and provide greatly increased penalties for gun predators and for those offenders committing crimes to acquire firearms" and to make such offenses "*not worth the sentence received upon conviction.*" LAWS OF 1995, ch. 129, § 1(2)(c), (2)(b) (emphasis added). The HTACI's authors clearly wished to make punishments

---

[2] It followed failed legislation the year prior. That proposed legislation contained provisions largely similar to the HTACI. But it did not include the provision at issue here. *Compare* H.B. 2921, 53d Leg., Reg. Sess. (Wash. 1994), *with* LAWS OF 1995, ch. 129, § 16(6).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

for certain firearm offenses harsh. McFarland is no more than an unfortunate case in point.

C.      While extending *Mulholland* to RCW 9.94A.589(1)(c) is legally supportable, extending it to RCW 9.41.040(6) is not

In *Mulholland*, this court recognized that a sentencing court had discretion to impose an exceptional downward sentence to the presumptively consecutive sentences imposed by RCW 9.94A.589(1)(b). 161 Wn.2d at 331. The majority seeks to extend this holding to RCW 9.94A.589(1)(c) because there is "no statutory basis to distinguish between the consecutive sentencing language" of RCW 9.94A.589(1)(b) with that of (1)(c). Majority at 7. While this may be true, there *is* a statutory basis to distinguish between the language of RCW 9.94A.589(1)(c) and RCW 9.41.040(6). There are three, in fact. The majority fails to address these distinctions.[3]

First, RCW 9.94A.535(1)(g) lists the multiple offense policy of RCW 9.94A.589 as illustrative of a mitigating circumstance supporting a sentencing court's use of discretion in applying an exceptional downward sentence. It makes no comparable reference to RCW 9.41.040(6). Next, only RCW 9.41.040(6) contains

---

[3] Instead, the majority summarily justifies its holding on the basis that "the act does not preclude exceptional sentences downward." Majority at 8. But, in fact, the act does preclude such sentences by indicating that its provisions applied "[n]otwithstanding any other law." LAWS OF 1995, ch. 129, § 16(6). Such "other law" would have included the predecessor to RCW 9.94A.535, which, as discussed above, was in effect at the time of the act.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
Fairhurst, C.J. (dissenting)

the critical and unconditional "[n]otwithstanding any other law" language. Finally, RCW 9.94A.589(1)(c) is arguably harsher than RCW 9.41.040(6). RCW 9.94A.589(1)(c) indicates that consecutive sentences must be imposed for *each count* of unlawful possession and theft of a firearm an offender is convicted for, *see* RCW 9.94A.589(1)(c) ("The offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed."), whereas, a plausible reading of RCW 9.41.040(6) indicates that consecutive sentences need only be imposed between *the crimes* of unlawful possession and theft of a firearm—not *for each count* of each crime. *See* RCW 9.41.040(6) ("[T]he offender shall serve consecutive sentences for each of the felony crimes of conviction listed in this subsection.").[4] Given this differing language, RCW 9.94A.589(1)(c) may produce a much harsher result than RCW 9.41.040(6),

---

[4] This issue was not briefed or argued by either party. It is a debatable point for which I am not expressing an opinion. I point it out only to demonstrate the textual differences between the two provisions. Intuitively, if, absent other charges, 10 firearm theft convictions need not result in consecutive sentences across counts, it seems curious that a single unlawful possession conviction would change this result. The legislative history in adopting the HTACI, while sparse, seems to support this conclusion. *See* H.B. REP. ON H.I. 159, at 6, 54th Leg., Reg. Sess. (Wash. 1995) ("If the person is also serving time for possession of a stolen firearm or stealing a firearm, the time served for unlawful possession of firearms must be served consecutively with the other offenses."). That being said, the Court of Appeals has issued seemingly conflicting opinions on the matter. *Compare State v. McReynolds*, 117 Wn. App. 309, 342-43, 71 P.3d 663 (2003) (finding that RCW 9.41.040(6) unambiguously requires consecutive sentences for each count of conviction for the firearm crimes specified in the statute), *and State v. Murphy*, 98 Wn. App. 42, 49, 988 P.2d 1018 (1999) (same holding), *with State v. Haggin*, 195 Wn. App. 315, 321, 381 P.3d 137 (2016) (holding that under RCW 9.41.040(6) "if a person is convicted of multiple counts but only in one category (i.e., multiple counts of unlawful possession), the trial court must run those sentences concurrently").

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
Fairhurst, C.J. (dissenting)

thereby justifying application of the discretion afforded by RCW 9.94A.535 to RCW 9.94A.589(1)(c), but not to RCW 9.41.040(6).

For the reasons stated above, I dissent. Both the majority and Justice Yu's dissent summarily conclude that *Mulholland* can be extended to an offender convicted of the crimes of unlawful possession of a firearm and theft of a firearm. But in reaching this conclusion, both opinions give short shrift to the plain language of RCW 9.41.040(6), the intent of the authors of the HTACI, and the textual distinctions between RCW 9.41.040(6) and RCW 9.94A.589(1)(c). All of these mandate the imposition of consecutive sentences between these two crimes.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
Fairhurst, C.J. (dissenting)

Fairhurst, C.J.

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

No. 92947-5

YU, J. (dissenting) — Some legal principles are so basic that there should be no need to reaffirm them. One such principle is that this court will not reverse a trial court's decision on direct appeal unless the record shows that the decision was made in error. However, on direct appeal in this case, the majority reverses the sentence imposed by the trial court but does not (and on the record presented cannot) show that any sentencing error occurred. Moreover, nothing in the record demonstrates that an exceptional sentence would be factually or legally justified. I cannot conceive of any legitimate reason for the majority's approach to this case. I therefore dissent.

ANALYSIS

I agree with some key points in the majority opinion. I appreciate that the majority declines to reverse the Court of Appeals holding that trial counsel was not ineffective for failing to raise a novel argument to extend the reasoning of *In re Personal Restraint of Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007), in support

1

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

of an exceptional sentence in this case. I further agree with the majority's *Mulholland* analysis on its merits.[1] And I applaud the majority's restraint to the extent that it appears to stop short of explicitly holding that the trial court abused its discretion by failing to raise a novel legal argument sua sponte or by failing to consider an exceptional sentence that no party requested.

I would approach the above issues differently and explicitly affirm the Court of Appeals. Nevertheless, once we have rejected (whether explicitly or implicitly) every claim of error that has been raised on direct appeal, our analysis should be over.

The majority, however, treats the need to locate error in the record as little more than an inconvenient formality by invoking its authority to consider issues raised for the first time on appeal "when necessary to produce a just resolution." Majority at 12. I fully support just resolutions, but a remand for resentencing in this case is precisely the opposite.

The problem is not merely that the argument to extend *Mulholland*'s reasoning was "belatedly raised." *Id.* The problem is that the record in this case

---

[1] I do, however, disagree with any suggestion that the Court of Appeals erred in declining to consider the merits of the *Mulholland* issue. *See* majority at 12. The Court of Appeals properly determined that this case should be decided in favor of the State regardless of whether *Mulholland* should be extended. *State v. McFarland*, No. 32873-2-III, slip op. at 18 (Wash. Ct. App. Mar. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/328732.unp.pdf. While the Court of Appeals has discretion to consider an issue that is unnecessary to the resolution of the case presented, I cannot agree that it erred in declining to do so.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

reveals neither a sentencing error nor any legally justifiable basis for imposing an exceptional sentence. Therefore, a just resolution of this case is the resolution reached by the Court of Appeals. We should affirm. If there is information outside the record that would support resentencing, then petitioner Cecily Zorada McFarland must do what every other similarly situated defendant is required to do and file a collateral attack.

A.    The court should explicitly affirm the Court of Appeals

As noted above, the majority does not appear to actually hold that the trial court abused its discretion or that trial counsel was ineffective. I would explicitly affirm the Court of Appeals and hold that neither claim of error is supported by the record. Indeed, the unsound rationale of the majority's decision in this case demonstrates that this is an area of law in need of some clarification.

1.    No abuse of discretion

It cannot be said that the trial court abused its discretion. It is, of course, well settled that "while trial judges have considerable discretion under the [Sentencing Reform Act of 1981], they are still required to act within its strictures and principles of due process of law." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005); ch. 9.94A RCW. Therefore, when the trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law. *Id.* However, *no* exceptional

3

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

sentence was requested here. This simply cannot be described as a situation

"where the court has *refused* to exercise discretion at all or has relied on an

impermissible basis for *refusing* to impose an exceptional sentence below the

standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104

(1997) (emphasis added). Courts do not refuse to do things that they are never

asked to do.[2]

To the extent that the Court of Appeals has suggested otherwise, it was

incorrect. In *State v. McGill*, the Court of Appeals remanded for resentencing even

though defense counsel did not request the trial court to impose an exceptional

sentence. 112 Wn. App. 95, 97, 47 P.3d 173 (2002). Its reasoning, however, is

paradoxical. On the one hand, *McGill* holds that resentencing was required

because "the trial court refused to exercise its discretion to consider an exceptional

sentence." *Id.* at 100. On the other hand, *McGill* holds that resentencing was also

required because a court cannot "exercise its discretion if it is not told it has

discretion to exercise." *Id.* at 102. It is difficult to understand how a trial court can

simultaneously *refuse* to exercise discretion and be *unable* to exercise discretion.

---

[2] In a very limited number of cases, we have indicated that the failure to raise certain
issues sua sponte can be reversible error. *E.g.*, *State v. Ramos*, 187 Wn.2d 420, 443, 387 P.3d
650 (2017), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. May 23, 2017) (No. 16-9363). I
cannot come up with any legitimate reason to hold that the circumstances of this case qualify for
such special treatment. The majority does not acknowledge that it gives this case special
treatment and therefore does not explain why it does so.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

State v. McFarland, No. 92947-5
(Yu, J., dissenting)

Moreover, this reasoning places an unreasonable burden on trial courts to raise issues sua sponte and interferes with the independence of trial counsel. We should reject it.

Even if the record in this case actually showed that the trial court had an erroneous view of the law (which, as I discuss further below, it does not), a court abuses its discretion only by actually making a decision based on an erroneous view of the law, not by expressing an erroneous view of a legal rule that does not apply to the issues presented. There was no abuse of discretion in this case.

2. No ineffective assistance of counsel

The majority does not address the merits of this issue, but we should explicitly hold that the Court of Appeals correctly held that trial counsel in this case was not ineffective.

To establish ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

McFarland argues that reasonable trial counsel would have known that *Mulholland* extends to firearm-related convictions because no published appellate cases have squarely held that concurrent sentences are *not* available as an

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

exceptional sentence for firearm-related convictions. But there are no published appellate cases that hold such concurrent sentences *are* available, either. And while I join the majority in extending *Mulholland*'s reasoning to multiple firearm-related convictions, the State's argument on that point is certainly defensible and has never been rejected in a published appellate case.

McFarland also places great weight on the fact that *Mulholland* was not a "significant change in the law" for purposes of RCW 10.73.100(6). *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). However, the inquiries are entirely different. Assessing deficient performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Meanwhile, "[a] 'significant change in the law' requires that the law, not counsels' understanding of the law on an unsettled question, has changed." *Miller*, 185 Wn.2d at 116 (quoting RCW 10.73.100(6)).

To hold trial counsel was deficient in this case, we would have to hold that trial counsel has a duty to raise all nonfrivolous arguments for extensions of current law that might occur to appellate counsel. Such a holding would severely undercut the "strong presumption" that trial counsel rendered effective assistance. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). It would also be

6

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

an unprecedented expansion of the scope of trial counsel's duty that "would place an unreasonable burden on defense counsel and set a standard for diligence that obliges counsel to raise issues in anticipation of any possible change in the law." *State v. Brown*, 159 Wn. App. 366, 373, 245 P.3d 776 (2011). Another reasonable trial attorney might have raised the *Mulholland* argument, but that is not a basis on which to hold that trial counsel in this case was deficient.

Therefore, I would explicitly affirm the Court of Appeals and hold that the trial court did not abuse its discretion and McFarland has not shown that she received ineffective assistance of counsel.

B.      There is no evidence in the record to support a remand for resentencing

Even though the record does not demonstrate error, the majority believes that affirming McFarland's sentence would be unjust. I do not question their sincerity, and I do not rule out the possibility that in some cases, the record could support such a conclusion. This is not one of those cases. It is not clear from the record that the trial court even had an erroneous view of the law, and nothing in the record indicates that an exceptional sentence would be factually or legally justified in this case.

I cannot agree with the majority's assertion that "McFarland's situation is not so different from that in *Mulholland*." Majority at 12. Even though Mulholland did not request concurrent sentences as an exceptional sentence at the

7

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

trial court level, he did request concurrent sentences based on a "'same criminal

conduct argument.'" *Mulholland*, 161 Wn.2d at 326 n.1. The trial court

determined that Mulholland's offenses were not the same criminal conduct and

went on to explicitly state, "'I think *the law requires me* to run them consecutive

[sic]. I don't believe there's any discretion that this court has in that regard.'" *Id.*

(emphasis added) (alteration in original). The record in *Mulholland* thus clearly

showed that the trial court had an erroneous view of the law. *Cf. McGill*, 112 Wn.

App. at 98 ("'*I'm sure you are aware that the legislature has decided that judges*

*should not have discretion beyond a certain sentencing range on these matters.*'").

In light of this clear record, we held on collateral review that "the trial court's

incorrect interpretation of the statutes that applied to the assault sentences is a

fundamental defect."[3] *Mulholland*, 161 Wn.2d at 332-33.

Meanwhile, the trial court in this case said only, "I don't have -- apparently

don't have much discretion, here." Verbatim Tr. of Proceedings (VTP) (Oct. 27,

2014) at 25. It is not clear whether the court thought it lacked discretion because it

had an erroneous view of the law or because it had an accurate view of the scope of

the parties' arguments. *State v. McFarland*, No. 32873-2-III, slip op. at 16 n.9

(Wash. Ct. App. Mar. 8, 2016) (unpublished), http://www.courts.wa.gov/

---

[3] We in fact denied review of Mulholland's direct appeal. *State v. Mulholland*, 153
Wn.2d 1018, 108 P.3d 1228 (2005).

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

opinions/pdf/328732.unp.pdf. This inconclusive record cannot be sufficient to show there was a fundamental defect.

Moreover, there is nothing in the record indicating an exceptional sentence would have been legally available in this case. RCW 9.94A.535(1)(g) allows exceptional sentencing where "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of [the Sentencing Reform Act], as expressed in RCW 9.94A.010." The record simply does not address how the Sentencing Reform Act's purpose as expressed in RCW 9.94A.010 applies to this case.

Instead, the record shows that defense counsel supported its request for sentencing at the bottom of the standard range by noting that if McFarland "had been found guilty of stealing toasters instead of firearms," her sentence would be much shorter. VTP (Oct. 27, 2014) at 23. McFarland was not found guilty of stealing toasters. She was found guilty of stealing firearms. The legislature has chosen to impose presumptively harsher sentences for stealing firearms than for stealing toasters. Disagreement with that legislative judgment is a not a legally appropriate basis on which to impose an exceptional sentence. *State v. Alexander*, 125 Wn.2d 717, 724-25, 888 P.2d 1169 (1995). This would be true even if we could impute trial counsel's disagreement with the legislature to the trial court, as the majority appears to do. Majority at 14.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

The record thus does not actually show that the trial court had an erroneous view of the law, and nothing in the record indicates that an exceptional sentence would have been justified. McFarland's sentence should be affirmed. She is free to seek collateral review with supporting evidence outside the record. *McFarland*, slip op. at 18-19. I am dismayed that a majority of this court holds that her standard-range sentence is infected by a fundamental defect solely because "the record suggests at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so." Majority at 14.

## CONCLUSION

Some may wonder why we should require McFarland to go through the extra step of seeking collateral review with supporting evidence instead of simply remanding and giving her a chance to submit new evidence to the trial court now. My response is simple: because that is what we require of every criminal defendant who cannot demonstrate error based on the record presented on direct appeal. *State v. Grier*, 171 Wn.2d 17, 29-30, 246 P.3d 1260 (2011); *State v. Elmore*, 139 Wn.2d 250, 302, 985 P.2d 289 (1999); *McFarland*, 127 Wn.2d at 335; 2 WASH. STATE BAR ASS'N, WASHINGTON APPELLATE PRACTICE DESKBOOK § 32.2(2)(c) at 32-7 (3d ed. 2005).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

While I do not question the majority's sincere belief that resentencing is the just result for McFarland, I respectfully submit that this result is extremely unjust for the thousands of other criminal defendants who file matters with this court every year. Sentencing decisions, while individualized, should nevertheless be based on a fair and predictable process, which should not be altered because a particular defendant appears harmless or sympathetic to a particular justice on review. Though many of the defendants who appear in our court remain faceless to us, and many more are depicted in the record only in their mugshots, each one of them possesses the same inherent human dignity. Each one of them is therefore entitled to equal treatment in our courts. I dissent.

11

*State v. McFarland*, No. 92947-5
(Yu, J., dissenting)

Yu, J.

González, J.

12