# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

    v.

JASON MICHAEL SMITH,

               Appellant.

No. 76961-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 23, 2019

APPELWICK, C.J. — Smith appeals his convictions for unlawful possession of a firearm, possession of a stolen firearm, and possession of a controlled substance with intent to manufacture or deliver. He argues that the to convict instructions required the State to prove beyond a reasonable doubt that he knew the make, caliber, and serial number of each firearm. He argues that the State failed to prove beyond a reasonable doubt that (1) he possessed the firearm found in a locked safe and (2) the firearm was easily accessible and readily available. He asserts that the trial court violated his right to jury unanimity as to the firearm enhancement. He further asserts that he received ineffective assistance of counsel due to his attorney's failure to challenge his offender score. He contends that the court erred in concluding that it had no discretion to impose concurrent sentences for the firearm-related convictions. Last, he argues that certain legal financial obligations should be stricken. We affirm Smith's convictions, but remand

to the trial court to strike the criminal filing fee, DNA collection fee, and portion of the judgment and sentence requiring interest accrual on nonrestitution LFOs.

FACTS

On March 24, 2015, Officer Michael Young and Detective Jonathan Elton executed a search warrant on a home in Marysville. They believed the home to be the residence of Jason Smith and his girlfriend, Necole Beliveau. The search warrant covered firearms and narcotics. Smith and Beliveau were home when Young and Elton arrived. Young arrested them both, and worked with other officers to clear the house before conducting the search.

After escorting Smith outside, Young asked him if there were any guns in the bedroom. Smith said that there were. When Young asked Smith what type of guns they were and where they were, Smith shouted to Beliveau, "[H]ey Necole, what kind of gun -- what kind of gun is that, a .380?" Beliveau responded, "[Y]es, it's a .380." Smith then told Young that in the bedroom there was "a .380 and a .45" caliber gun.

Smith also told Young that the guns belonged to Beliveau, who had a concealed weapons permit. Young responded, "Jason, you are not allowed to be around guns, right?" Smith agreed. He told Young that he was not sure where the guns were, but that one of them "might be in the safe." He said that the safe belonged to his ex-girlfriend, Jennifer Marshall, and that he did not have the combination for it. He also stated that there was a second, unlocked safe inside the house.

Officer Chris Farley assisted Young with the search. During the search, Young entered the bedroom at the bottom of the stairs where Smith and Beliveau had come from. Under a pillow in the center of the bed, he found a .45 caliber Heckler & Koch (H&K) pistol, serial number 29015225. The pistol was loaded, but did not have a round in the chamber.

Under some hanging clothes, next to what Young believed was Beliveau's side of the bed, Farley found a locked safe.[1] Smith and Beliveau denied the safe was theirs, and stated that they did not have access to it. After prying open the safe, Farley found a pink handled .380 caliber Bersa pistol, serial number 481547, inside, along with some holsters and magazines for the H&K pistol. The pistol was loaded, but did not have a round in the chamber.

In addition to the firearms, Young found what appeared to be a methamphetamine bong, a digital scale with white crystal residue on it, and other drug paraphernalia inside the bedroom. He believed that the residue was methamphetamine.

Later that day, after Smith was transported to the Marysville jail, he asked to speak with Elton. Smith told Elton that he knew of a large number of stolen firearms located in a storage unit between Marysville and Smokey Point. He did not provide Elton with the name of the storage unit or the person who rented it, but said that he had the key to the unit at his house. Young asked Beliveau about the

---

[1] Young believed that side of the bed was Beliveau's because he found her purse there.

3

firearms, and she ended up directing him to a unit at a Public Storage facility in Arlington.

Ian Christensen, the manager of the Public Storage, testified that he transferred Smith from a smaller storage unit to the storage unit at issue. Smith rented the unit for about six months. Christensen also testified that on March 23, 2015, the day before Smith's arrest, Smith came in to the facility to convey the unit to his friend, Jennifer Cole. Cole did not request a new code to the unit.

About two hours after speaking with Smith, Elton obtained a warrant to search the unit. He opened the unit with a key from Smith's house. He found six firearms inside the unit: (1) a Hi-Point rifle, serial number H21588, (2) a Norinco Samozariadnyis Karabina Simonova (SKS) rifle, serial number 0496, (3) a Daewoo 9 mm handgun, serial number 16655, (4) a Remington 597 .22 caliber rifle, serial number 2628650, (5) a Mossberg shotgun, serial number AM058273, and (6) a Remington 870 shotgun, serial number RS4560A. Elton was unable to obtain any fingerprint results from the firearms.

The State charged Smith with eight counts of unlawful possession of a firearm in the first degree, two counts of possession of a stolen firearm, and one count of possession of a controlled substance with intent to manufacture or deliver. The possession of a controlled substance charge included a firearm enhancement.

At trial, the court instructed the jury that for each unlawful possession of a firearm count, it had to find that Smith "knowingly had a firearm, to wit," and provided the specific make, caliber, and serial number of each firearm. For example, the "to convict" instruction for count 1 stated, "[T]he defendant knowingly

4

had a firearm, to wit: H/K Semi-Automatic .45 Caliber Pistol, serial number 29-015225, in his possession or control." For the firearm allegation, the court did not instruct the jury that it had to unanimously agree as to which firearm it was relying on.

The jury found Smith guilty of all eight counts of unlawful possession of a firearm. It found him guilty of one count of possession of a stolen firearm, but not guilty on the other count. And, it found him guilty of possession of a controlled substance with intent to manufacture or deliver. It also found that he was armed with a firearm at the time of the commission of the crime.

At sentencing, the State argued that RCW 9.94A.589(1)(c) required the trial court to impose consecutive sentences for all eight unlawful possession of a firearm convictions and the possession of a stolen firearm conviction. The trial court agreed to adopt the State's sentencing recommendation. It imposed 87 months of confinement for each unlawful possession of a firearm conviction, 72 months of confinement for the possession of a stolen firearm conviction, and 72 months of confinement for the firearm enhancement. It stated that these sentences would run consecutively. Last, it imposed 120 months of confinement for the possession of a controlled substance conviction. It stated that this sentence would run concurrently with the others.

Smith received a total sentence of 70 years of confinement. The trial court imposed a $200 criminal filing fee, a $100 biological sample fee, and a $500 victim assessment. His judgment and sentence provided, "The financial obligations

5

imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments."

Smith appeals.

## DISCUSSION

Smith makes six arguments. First, he argues that the to convict instructions required the State to prove beyond a reasonable doubt that he knew the make, caliber, and serial number of each firearm. Second, he argues that the State failed to prove beyond a reasonable doubt that (1) he had dominion and control over the firearm in the locked safe, and (2) the firearm was easily accessible and readily available. Third, he argues that the trial court violated his right to jury unanimity, because it failed to instruct the jury that it had to unanimously agree on a specific firearm for the firearm enhancement. Fourth, he argues that he received ineffective assistance of counsel due to his attorney's failure to challenge his offender score. Fifth, he argues that the trial court erred in concluding that it lacked discretion to impose concurrent sentences. And sixth, he challenges the imposition of certain legal financial obligations.

### I. Sufficiency of Evidence

Smith argues that the to convict instructions required the State to prove beyond a reasonable doubt that he knew the make, caliber, and serial number of each firearm. He contends that the State failed to do so. He also argues that the State failed to prove beyond a reasonable doubt that (1) he had dominion and control over the firearm in the locked safe, and (2) the firearm was easily accessible and readily available.

6

The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial and direct evidence are equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. See State v. Johnston, 156 Wn.2d 355, 365-66, 127 P.3d 707 (2006).

A. Possession

Smith argues that, under the law of the case doctrine, the State was required to prove that he knew the particular make, caliber, and serial number of each firearm he possessed, and that it failed to do so. The to convict instructions for the eight unlawful possession of a firearm charges required the State to prove that Smith "knowingly had a firearm, to wit [make, caliber, and serial number of each firearm]." Knowledge of a description of the firearm is not an element of unlawful possession of a firearm in the first degree. See RCW 9.41.040(1)(a).

Under the law of the case doctrine, jury instructions not objected to become the law of the case. State v. Hickman, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998). "In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included

7

without objection in the 'to convict' instruction." Id. at 102. Because the State did not object to the instructions, Smith argues that it assumed the burden of proving that he knew the particular make, caliber, and serial number of each firearm. The State agrees that, when the trial court included the description of each firearm in the to convict instruction, it took on the added burden of proving that Smith had possession or control of that specifically described firearm.

### 1. Firearms in Bedroom

At trial, the State introduced into evidence the two weapons found in Smith's bedroom: (1) a .45 caliber H&K pistol, serial number 29015225, and (2) a pink handled .380 caliber Bersa pistol, serial number 481547.

Before police found the firearms, Smith told Young that there were guns inside the house. He specifically told Young that there was "a .380 and a .45." Young found the .45 caliber H&K pistol under a pillow in the center of Smith's bed. Farley found the .380 caliber Bersa pistol inside a locked safe in the bedroom.

Smith contends that the State failed to prove beyond a reasonable doubt that he had dominion and control over the Bersa pistol found in the locked safe. He argues that, although he had dominion and control over the premises where the firearm was found, there "was not sufficient [evidence] to establish his constructive possession of the firearm."

For purposes of constructive possession, the person's control need not be exclusive, but the State must show more than mere proximity. State v. Raleigh, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010). When determining whether a person has dominion and control over an item, this court examines the totality of

the circumstances. State v. Summers, 107 Wn. App. 373, 384, 28 P.3d 780, 43 P.3d 526 (2001). Factors indicating dominion and control include whether the person has the ability to reduce the object to actual possession, and physical proximity to the object. State v. Chouinard, 169 Wn. App. 895, 899, 282 P.2d 117 (2012). Knowledge of the item's presence alone is insufficient. Id.

Before the officers found the firearms in Smith's house, Smith stated that he was not sure where the guns were, but that one of them "might be in the safe." He said that the safe belonged to his ex-girlfriend. Farley found the locked safe in Smith's bedroom. Smith and Beliveau denied the safe was theirs, and stated that they did not have access to it. As a result, Farley had to force the safe open. Inside the safe, he found the .380 caliber Bersa pistol, along with some holsters and magazines for the .45 caliber H&K pistol.

Smith argues that this evidence is not sufficient to establish constructive possession because the "safe belonged to [his] ex-girlfriend and he did not know the combination to the keypad lock." He points out that "[t]he officers had to force the safe open with a pry bar." He also states that Beliveau was borrowing the Bersa pistol from someone, and thinking about buying it. And, he notes that "[t]here was no evidence that [he] ever handled the firearm."

Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Smith had constructive possession of the .380 caliber Bersa pistol in the locked safe. Specifically, a jury could infer that because Smith told Young that there was "a .380" in the bedroom, the safe was in the bedroom, and the safe also contained holsters and magazines for the H&K pistol in the bed, Smith

9

had dominion and control over the firearm. Although Smith denied having access to the safe, this court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. See Johnston, 156 Wn.2d 355 at 365-66. The jury was free to reject Smith's denial.

The evidence is sufficient to allow a jury to conclude that Smith knowingly possessed both the H&K and Bersa pistols found in the bedroom.

### 2. Firearms in Storage Unit

The State also introduced into evidence the six firearms found in the storage unit: (1) a Hi-Point rifle, serial number H21588, (2) a Norinco SKS rifle, serial number 0496, (3) a Daewoo 9 mm handgun, serial number 16655, (4) a Remington .22 caliber rifle, serial number 2628650, (5) a Mossberg shotgun, serial number AM058273, and (6) a Remington 870 shotgun, serial number RS4560A.

Before police found the firearms, Smith told Elton that he knew of a large number of stolen firearms located in a storage unit between Marysville and Smokey Point. He said that he had a key to the unit at his house. Elton located the unit in Arlington, used a key from Smith's house to open it, and found the six firearms inside. Christensen, the manager at the storage facility, testified that he had transferred Smith from a smaller storage unit to the unit at issue. He also testified that on March 23, 2015, the day before Smith's arrest, Smith came in to the facility to convey the unit to his friend, Cole. Cole did not request a new code to the unit. Thus, Smith had both key and code access to the unit, even after conveying the unity to Cole.

10

Viewing this evidence in a light most favorable to the State, a reasonable jury could find that Smith knowingly possessed the six firearms found in the storage unit. Smith told Elton about the storage unit with stolen firearms. The key to the unit was at his house, he conveyed the unit to Cole the day before, and the code to the unit had not been changed.

The evidence is sufficient to allow a jury to conclude that Smith knowingly possessed each of the specifically described firearms found in the storage unit.

3. Specific Weapons Identified

Although the State agrees that it took on the added burden of proving that Smith possessed each specifically described firearm, it argues that it was not required to prove that he knew the make, caliber, and serial number of each firearm. It states that, at best, Smith's argument "points out an ambiguity in the 'to convict' instruction." The State contends that "the most natural reading of the elements instruction required the State to prove only that the defendant knowingly possessed or controlled a firearm."

To support that the State had to prove that he knew each firearm's make, caliber, and serial number, Smith relies on State v. Johnson, 188 Wn.2d 742, 399 P.3d 507 (2017), and State v. Sinrud, 200 Wn. App. 643, 403 P.3d 96 (2017). Neither of these cases involve jury instructions with the phrase "to wit" placed before a description. Thus, they are not instructive.

We reject Smith's argument that the State had to prove that he knew each firearm's make, caliber, and serial number. As established above, the State met its burden of proving beyond a reasonable doubt that Smith knowingly possessed

11

each specifically described firearm. The State was able to determine each firearm's make, caliber, and serial number by possessing the firearms and looking at that information. If Smith had constructive possession of each specifically described firearm, then he necessarily had constructive knowledge of that information. It does not matter whether he could recite this information from memory. The to convict instruction did not create the added burden of proving that Smith actually knew each firearm's make, caliber, and serial number.

B. Armed for Purposes of Firearm Enhancement

The State relied on both the H&K pistol and the Bersa pistol found in the locked safe in arguing for the firearm enhancement. Smith does not contest that the H&K pistol was easily accessible and readily available. But, he argues that the State failed to prove beyond a reasonable doubt that the Bersa pistol was easily accessible and readily available. As a result, he contends that the State failed to prove that he was armed for purposes of the firearm enhancement.

Whether a person is armed is a mixed question of law and fact. State v. Schelin, 147 Wn.2d 562, 565-66, 55 P.3d 632 (2002). When the court determines whether the facts are sufficient as a matter of law to prove that the defendant was armed, it is a question of law reviewed de novo. Id. at 566.

A person is armed for the purposes of a sentencing enhancement if the weapon is easily accessible and readily available for offensive or defensive purposes during the time of the crime. State v. Brown, 162 Wn.2d 422, 431, 173 P.3d 245 (2007); State v. O'Neal, 159 Wn.2d 500, 503-04, 150 P.3d 1121 (2007). But, a person is not armed simply because he or she owns or possesses a weapon.

State v. Eckenrode, 159 Wn.2d 488, 493, 150 P.3d 1116 (2007). Instead, there must be a nexus between the defendant, the weapon, and the crime. Id. In examining this nexus, courts look at the nature of the crime, the type of weapon, and the circumstances under which it is found, such was whether it was out in the open, in a locked container, or in a closet. State v. Ague-Masters, 138 Wn. App. 86, 104, 156 P.3d 265 (2007).

Smith relies in part on State v. Valdobinos, 122 Wn.2d 270, 858 P.2d 199 (1993). There, police found a black bag containing $1,875 and 846 grams of cocaine, as well as an unloaded rifle, under a bed in Valdobinos's mobile home. Id. at 274, 281. The State Supreme Court held that "evidence that an unloaded rifle was found under the bed in the bedroom, without more, is insufficient to qualify Valdobinos as 'armed' in the sense of having a weapon accessible and readily available for offensive or defensive purposes." Id. at 282. Thus, it struck the deadly weapon enhancement from his sentence for possession of a controlled substance with intent to deliver. Id.

The State compares this case to State v. Neff, 163 Wn.2d 453, 181 P.3d 819 (2008). There, police found two loaded pistols in a safe in Neff's garage. Id. at 464. The safe also contained four bags of marijuana. Id. Neff was not in the garage at the time of his arrest, but he was holding keys to the garage. Id. at 456-57, 464. Police also found a third pistol hanging from a tool belt in the garage's rafters. Id. at 464. And, they found two security cameras and a monitor in the garage on which to view live feeds. Id.

13

Neff argued that because there was no evidence or finding that he was in the garage with the guns when police arrived, he could not have been armed. Id. Although it was unclear from the record whether Neff could easily reach the gun in the rafters, the State Supreme Court construed that fact in the State's favor. Id. It held that the above facts, together with the inferences favoring the State, were enough for a rational person to find beyond a reasonable doubt that Neff was armed. Id. Specifically, it noted that the security cameras and video monitor provided the necessary additional proof beyond Neff's presence and constructive possession of the guns linking the guns to the crime of manufacturing. Id. It also observed that a defendant does not have to be armed at the moment of arrest to be armed for purposes of a firearm enhancement. Id.

Here, after the officers arrived at Smith's house, he came out of a bedroom door and showed himself at the base of a stairwell. Inside that bedroom, officers found a quarter pound of methamphetamine. Officers also found what appeared to be a methamphetamine bong, a digital scale with a large amount of white crystal residue on it, and a large amount of brand new packaging bags. Young testified that such items are indicative of drug sales.

Before the officers found the firearms, Smith told Young that there were guns in the bedroom. He specifically told Young that there was "a .380 and a .45." He stated that he was not sure where the guns were, but that one of them "might be in the safe." He said that the safe belonged to Marshall, and that Beliveau said she was borrowing the Bersa pistol. Farley found the locked safe in the bedroom. The safe with the pistol inside was plainly visible next to the bed, below clothes

14

that were on hangers above. And, unlike Valdobinos, the pistol was not under the bed and unloaded. Inside the safe, Farley found the loaded .380 caliber Bersa pistol, along with some holsters and magazines for the .45 caliber H&K pistol. Smith does not argue that the Bersa would not have been within reach. Rather, he argues that it was not available, because it was in the safe. The safe had a keypad. Smith and Beliveau denied that they had access to the safe, and Farley had to force it open. Smith stated that the safe belonged to Marshall, and that Beliveau was borrowing the Bersa pistol. He does not cite evidence that Marshall and Beliveau knew one another. A jury could infer from this evidence that Smith knew the code to the safe.

After the officers found the firearms, Smith told Young that he had the guns because an individual had made threats to harm him and his family. Elton testified that "a drug dealer usually carries firearms to protect himself from being robbed from another competit[or] or another purchaser." From the Bersa pistol's proximity to the evidence of illicit drugs, a jury could infer that the pistol was linked to the crime of manufacturing. Accordingly, there is sufficient evidence to demonstrate that the firearm found in the locked safe was easily accessible and readily available for offensive or defensive purposes.

The evidence is sufficient to allow a jury to conclude that Smith was armed with the Bersa pistol.

II.   Unanimous Jury Verdict

Smith argues that the trial court violated his right to a unanimous jury verdict in failing to instruct the jury that it had to unanimously agree on a particular firearm

15

for the firearm enhancement. He also notes that, at trial, the State did not rely on a single firearm in arguing for the enhancement. Rather, it stated,

> Here we have testimony that <u>both of those two guns</u> are two to five feet away from where all those drugs are. We also have information that often it is not uncommon for someone who is selling narcotics to have some form of protection when they are doing so. So I submit to you that Mr. Smith did, in fact, possess and was armed with a firearm at the time of the commission of the crime in Count 3, which is the possession of a controlled substance with intent to deliver or manufacture.

(Emphasis added.)

The State contends that Smith failed to preserve the question of jury unanimity on review. Smith does not argue that he raised the issue at trial. Generally, this court does not review claims raised for the first time on appeal. RAP 2.5(a). However, a party may raise for the first time on appeal a manifest error affecting a constitutional right. RAP 2.5(a)(3). "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999) (quoting State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

Smith argues that this court should conflate the analyses for determining whether an alleged error was manifest, and whether a unanimity instruction was required. He relies on State v. Knutz, 161 Wn. App. 395, 253 P.3d 437 (2011). There, this court concluded that "[b]ecause . . . the test for determining whether an alleged error is 'manifest' is closely related to the test for the substantive issue of

whether a Petrich [unanimity] instruction was required, we conflate these two analyses." Knutz, 161 Wn. App. at 407 (citing State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988). As a result, we reach the issue under Knutz.

Criminal defendants in Washington have a right to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the means by which the defendant is found to have committed the crime." Id. Specifically, "[w]hen the evidence indicates that several distinct criminal acts have been committed, but [the] defendant is charged with only one count of criminal conduct, jury unanimity must be protected." Petrich, 101 Wn.2d at 572. When the State presents evidence of several acts that could form the basis of the count charged, either the State must tell the jury which act to rely on, or the court must instruct the jury to agree on a particular criminal act. State v. Stockmyer, 83 Wn. App. 77, 86, 920 P.2d 1201 (1996). However, "[i]f the evidence is sufficient to support each alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction." Ortega-Martinez, 124 Wn.2d at 707-08.

A firearm enhancement is not an independent crime. Smith cites no authority suggesting how the general jury unanimity analysis applies to a firearm enhancement. And, he did not seek a unanimity instruction at trial. The trial court was not required to provide a unanimity instruction for the firearm enhancement.

17

Even if the general jury unanimity analysis applied to firearm enhancements, sufficient evidence supported each alternative means of satisfying the enhancement. The evidence is sufficient to allow a jury to conclude that Smith was armed with either the H&K pistol in the bed or the Bersa pistol in the locked safe. If the evidence is sufficient to support each of the alternative means submitted to the jury, "we infer that the jury rested its decision on a unanimous finding as to the means." Id. The trial court did not violate Smith's right to a unanimous jury verdict.

III.     Same Criminal Conduct and Ineffective Assistance of Counsel

Smith argues that he received ineffective assistance of counsel due to his attorney's failure to challenge his offender score. He argues that his unlawful possession of a firearm convictions encompassed the same criminal conduct. Specifically, he contends that "[t]he trial court abused its discretion and misapplied the law when it counted the eight convictions for unlawful possession of a firearm separately in the offender score." He asserts that, under RCW 9.94A.589(1)(a), the six convictions for the firearms in the storage unit and the two convictions for the firearms in the bedroom encompassed the same criminal conduct.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances, and that the deficient performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). If one of the two prongs of the test is absent, we need not

18

inquire further. <u>Strickland</u>, 466 U.S. at 697; <u>State v. Foster</u>, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. <u>State v. McFarland</u>, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Prejudice is present if there is a reasonable probability that, but for counsel's error, the result would have been different. <u>Id.</u> at 334-35.

RCW 9.94A.589(1)(a) states,

> Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime.

Because Smith was convicted of unlawful possession of a firearm in the first degree and possession of a stolen firearm, RCW 9.94A.589(1)(c) applies to his firearm-related convictions. Under RCW 9.94A.589(1)(c),

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, the standard sentence range for each of these current offenses shall be determined by using all other current and prior convictions, except other current convictions for the felony crimes listed in subsection (1)(c), as if they were prior convictions. The offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed.

19

The most recent case Smith relies on is Stockmyer. There, Stockmyer was convicted of seven counts of first degree unlawful possession of a firearm, first degree assault with a firearm enhancement, and unlawful manufacture of a controlled substance with a firearm enhancement. Stockmyer, 136 Wn. App. at 216. RCW 9.94A.589(1)(c) was not applicable, because Stockmyer was not also convicted of theft of a firearm or possession of a stolen firearm. Thus, Stockmyer does not control.

Smith also relies on State v. Haddock, 141 Wn.2d 103, 3 P.3d 733 (2000), and State v. Simonson, 92 Wn. App. 874, 960 P.2d 955 (1998). In Haddock and Simonson, the defendants committed their offenses in 1995 and 1996, respectively. 141 Wn.2d at 106; 91 Wn. App. at 877. The statute governing consecutive and concurrent sentences at that time did not include a provision similar to RCW 9.94A.589(1)(c). See former RCW 9.94A.400 (1995). As a result, those cases are not instructive.

RCW 9.94A.589(1)(c) applies here. It prohibits the trial court from counting Smith's current firearm-related convictions in calculating the offender scores for each firearm-related conviction. The trial court complied with this provision and did not include his current firearm-related convictions in the offender scores for each firearm-related conviction. Had Smith's counsel made a same criminal conduct argument under RCW 9.94A.589(1)(a) as to these convictions, it would have failed as a matter of law. Accordingly, Smith's counsel's performance did not fall below an objective standard of reasonableness.

The trial court did not abuse its discretion in failing to find that Smith's unlawful possession of a firearm convictions encompassed the same criminal conduct under RCW 9.94A.589(1)(a). And, Smith did not receive ineffective assistance of counsel, because RCW 9.94A.589(1)(a) did not apply to his firearm-related convictions.[2]

IV. Concurrent Sentences

Smith argues that the trial court erred in concluding that it had no discretion to impose concurrent sentences for the firearm-related offenses.

At sentencing, the State cited RCW 9.94A.589(1)(c) in asserting that Smith's sentences for the firearm-related offenses "must run consecutively." In its memorandum, it cited State v. McReynolds, 117 Wn. App. 309, 71 P.3d 663 (2003), for the proposition that RCW 9.94A.589(1)(c) clearly and unambiguously prohibits concurrent sentences for the listed firearm crimes. The McReynolds

---

[2] Smith does not address this argument separately to his firearm-related convictions and his controlled substance conviction. Unlike his firearm-related convictions, RCW 9.94A.589(1)(a) did apply to his controlled substance conviction. His offender score for his controlled substance conviction included 9 points for his current firearm-related convictions, for a total score of 20. His trial counsel failed to make a same criminal conduct argument as to this conviction. But, even without including the 9 firearm-related convictions in his offender score, he still would have had an offender score of 11 based on his prior convictions. The State noted in its sentencing memorandum that, for the controlled substance conviction, the standard range for an offender score of 9 plus is 100 to 120 months. The trial court sentenced Smith to 120 months for this conviction. And, it ordered that those 120 months be served concurrently with the rest of his 70 year sentence. Thus, even if the trial court had found that his 6 convictions for the firearms in the storage unit and his 2 convictions for the firearms in the bedroom encompassed the same criminal conduct, Smith still would have had an offender score of 9 plus. As a result, we find no prejudice based on his trial counsel's failure to make a same criminal conduct argument as to his controlled substance conviction. His ineffective assistance of counsel claim still fails.

court actually determined that another statute, RCW 9.41.040(6), prohibits such sentences. 117 Wn. App. at 342-43. The State also cited State v. Haggin, 195 Wn. App. 315, 381 P.3d 137 (2016). There, this court determined that "RCW 9.94A.589(1)(c) requires trial courts to run sentences consecutively only when a person is convicted of unlawful possession in addition to firearm theft or possession of a stolen firearm." Haggin, 195 Wn. App. at 324.

Smith did not take issue with the State's characterization of the case law. At sentencing, his counsel stated, "Based on my research I do believe that the State is correct regarding the case law in this matter, and I also believe that the State is asking for the least amount she possibly could."[3]

The trial court adopted the State's sentencing recommendation. It imposed 87 months of confinement for each unlawful possession of a firearm conviction, 72 months of confinement for the possession of a stolen firearm conviction, and 72 months of confinement for the firearm enhancement.[4] It stated that these sentences would run consecutively. Smith received a total sentence of 70 years of confinement.

RCW 9.94A.589(1)(c) provides,

> If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm,

---

[3] The State does not challenge Smith's ability to raise this issue on appeal. But, based on the transcript from the sentencing hearing, Smith did not raise the possibility of concurrent sentences, nor argue that it was error for the trial court to impose consecutive sentences for the firearm-related offenses.

[4] It also imposed 120 months of confinement for the controlled substance conviction. It stated that those 120 months would run concurrently with his 70 year sentence.

or both, the standard range sentence for each of these current offenses shall be determined by using all other current and prior convictions, except other current convictions for the felony crimes listed in this subsection (1)(c), as if they were prior convictions. The offender shall serve consecutive sentences for each conviction of the felony crimes listed in this subsection (1)(c), and for each firearm unlawfully possessed.

(Emphasis added.) But, if a court finds that a presumptive sentence under RCW 9.94A.589 is "clearly excessive in light of the purpose of the [Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW]," it has discretion to impose an exceptional mitigated sentence. RCW 9.94A.535(1)(g). Among the purposes of the SRA is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1).

Smith relies primarily on an opinion issued after his June 2017 sentencing, State v. McFarland, 189 Wn.2d 47, 399 P.3d 1106 (2017). In McFarland, the State Supreme Court held that remand for resentencing was warranted because the record suggested "at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so." Id. at 59.

At sentencing, McFarland's counsel had agreed with the State as to running his firearm-related sentences consecutively, but had expressed concern about the overall sentence length. Id. at 50-51. Neither his counsel nor the trial court considered imposing an exceptional sentence downward by running the firearm-related sentences concurrently. Id. at 51. The trial court stated, "'I don't have -- apparently [I] don't have much discretion, here. Given the fact that these charges

23

are going to be stacked one on top of another, I don't think -- I don't think [the] high end is called for, here.'" Id. (alterations in original).

On appeal, the State Supreme Court clarified that "nothing in the SRA preclud[es] concurrent exceptional sentences for firearm related-convictions." Id. at 54. Specifically, it held, "[I]n a case in which standard range consecutive sentencing for multiple firearm-related convictions 'results in a presumptive sentence that is clearly excessive in light of the purpose of [the SRA],' a sentencing court has discretion to impose an exceptional, mitigated sentence by imposing concurrent firearm-related sentences." Id. at 55 (alterations in original) (quoting RCW 9.94A.535(1)(g)).

A discretionary sentence within the standard range is reviewable where the trial court has refused to exercise its discretion at all, or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. McFarland, 189 Wn.2d at 56. A trial court errs when (1) "it refuses categorically to impose an exceptional sentence below the standard range under any circumstances," or (2) when it operates under the "mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [the defendant] may have been eligible." State v. Garcia-Martinez, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997); In re Pers. Restraint of Mulholland, 161 Wn.2d 322, 333, 166 P.3d 677 (2007).

Here, Smith asserts that the trial court erroneously concluded that it did not have discretion to impose concurrent sentences for the firearm-related offenses. But, the court did not make such a statement. Rather, it stated in part,

> The law applicable to your sentence is complex, and it is because as [the State] indicated, the Legislature has passed a series of laws that require the Court and really all of society to recognize the intolerance that we have and should have for the combination of firearms and other criminal activity, particularly where an individual has a criminal conviction history. You have been advised so many times of your prohibition against possessing firearms. I say that because you have been convicted of multiple felonies in the past. It is always a practice of the Court to advise an individual they may not possess firearms at the time of sentencing. There is no doubt in this case that you knew that you could not possess firearms, and nevertheless, there are these findings by the jury that you possessed a significant number of firearms. And, of course, this is part of the possession with intent to manufacture or distribute methamphetamine, another count which you were convicted by the jury. Given your criminal conviction history, you are facing serious and substantial penalties for all of these things.

It then adopted the State's sentencing recommendation.

The trial court's statements about "the combination of firearms and other criminal activity" in this case, as well as Smith's criminal history, suggest that it was not inclined to consider an exceptional sentence below the standard range. As a result, the court would have no reason to comment on or express concern about its authority to impose an exceptional sentence. The trial court did not err in sentencing Smith.

V.    Legal Financial Obligations

Smith argues last that his criminal filing fee, DNA (deoxyribonucleic acid) collection fee, and the portion of the judgment and sentence requiring interest accrual on nonrestitution legal financial obligations (LFOs) should be stricken. He

relies on House Bill 1783[5] and State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018).

In Ramirez, the State Supreme Court held that House Bill 1783 applies prospectively to cases on appeal. 191 Wn.2d at 747. House Bill 1783 amends RCW 10.82.090, providing that "no interest shall accrue on nonrestitution legal financial obligations." LAWS OF 2018, ch. 269, § 1(1). It amends RCW 36.18.020(2)(h) to prohibit courts from imposing the $200 filing fee on defendants who are indigent. See id. § 17(2)(h). And, it amends RCW 43.43.7541, providing that the $100 DNA collection fee is not mandatory where "the state has previously collected the offender's DNA as a result of a prior conviction." Id. § 18.

At Smith's sentencing, the trial court suspended the crime lab fee due to his indigency. Exhibit 1 to the State's sentencing memorandum indicates that it had previously collected Smith's DNA. And, while the State does not address interest accrual on Smith's nonrestitution LFOs, the portion of the judgment and sentence requiring such accrual should be stricken. See LAWS OF 2018, ch. 269, § 1(1). Accordingly, we remand to the trial court to strike the criminal filing fee, DNA collection fee, and the portion of the judgment and sentence requiring interest accrual on nonrestitution LFOs.

---

[5] ENGROSSED SECOND SUBSTITUTE H.B. 1783, §§ 17(2)(h), 18, 65th Leg., Reg. Sess. (Wash. 2018) (House Bill 1783).

We affirm Smith's convictions, but remand to the trial court to strike the criminal filing fee, DNA collection fee, and portion of the judgment and sentence requiring interest accrual on nonrestitution LFOs.

Appelwick, C.J.

WE CONCUR:

Leach, J.                    Dwyer, J.